1
2
3
4
5
6
7

8                      UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   UNITED STATES OF AMERICA,                   No.  2:12-cr-0066-KJM-KJN

12                  Respondent,

13          v.                                    FINDINGS AND RECOMMENDATIONS

14   ALLA SAMCHUK,

15                  Movant.

16

17

18       I.       Introduction

19          Movant is a federal prisoner, proceeding without counsel, with a motion to vacate, set

20   aside or correct her conviction and sentence pursuant to 28 U.S.C. § 2255.  Movant challenges

21   her  2016 convictions for bank fraud (18 U.S.C. § 1344 [counts 1-6]), making false statements (18

22   U.S.C. § 1014 [counts 7-12]), money laundering (18 U.S.C. § 1957 [count 13]), and aggravated

23   identity theft (18 U.S.C. § 1028A [count 14]).  She is currently serving a total sentence of 111

24   months.

25          In her motion, movant challenges her conviction and sentence as to counts 13 (money

26   laundering) and 14 (aggravated identity theft), asserting her convictions on those counts were the

27   result of ineffective assistance of counsel for counsels' failure to move to dismiss or otherwise

28   challenge counts 13 and 14 as violative of the applicable statute of limitations period.  (ECF No.

                                                  1

1    233 at 4, 24-24; ECF No. 247 at 3-5.)  Movant further asserts counsel at sentencing was

2    ineffective for failing to challenge the loss amount by deducting "any amount recovered or

3    recoverable by the creditor for the sale of the collateral."  (ECF No. 233 at 5, 34-38; ECF No. 247

4    at 5-7.)  For the reasons stated herein, the undersigned recommends Movant's motion be denied.

5        II.      Brief Factual Background[1]

6            Movant was a licensed real estate agent in the Sacramento area when the incidents giving

7    rise to her convictions occurred.   An investigation by the Federal Bureau of Investigation

8    revealed that Movant facilitated the purchase of three Sacramento area properties by way of  the

9    use of straw buyers and the submission of fraudulent loan application documentation in all three

10   schemes.

11       III.     Procedural Background

12           In an indictment filed February 16, 2012, Movant was alleged to have committed four

13   counts of bank fraud (18 U.S.C. § 1344), four counts of making a false statement (18 U.S.C.

14   § 1014), one count of money laundering (18 U.S.C. § 1957), one count of identity theft (18

15   U.S.C. § 1028(a)(7)), and one count of aggravated identity theft (18 U.S.C. § 1028A(a)(1)).  The

16   indictment further sought criminal forfeiture upon conviction.  (ECF No. 10.)  On February 21,

17   2012, Movant pled not guilty to all charges.  (ECF No. 12.)

18           Attorney Kelly Babineau was appointed to represent Movant.  (ECF No. 16.)  Following

19   numerous stipulations to continue status (see ECF Nos. 20, 23, 26, 28, 30, 32, 34, 36, 39), at a

20   July 2013 status conference, the court scheduled the matter for a further status conference "with

21   possible Change of Plea or Trial Setting" to be held the following month.  (ECF No. 40.)

22   Following additional stipulations to continue that conference, ultimately the conference was held

23   and, on November 21, 2013, Movant's request for substitution of counsel was granted; attorney

24   Gregory Foster was then appointed to represent her.  (ECF Nos. 51 & 52.)

25           On February 21, 2014, a  status conference was held wherein trial was set for December 1,

26   2014.  (ECF No. 57.)  Thereafter, on July 15, 2014, Movant submitted another substitution of

27

28   _____

[1] Where appropriate in the Discussion section, additional facts will be discussed and cited as
necessary.

1  attorney.  (ECF No. 58.)  Thereafter, attorney John Duree commenced representation of Movant's

2  interests on July 22, 2014.  (ECF No. 59.)

3      On October 7, 2014, the district court ordered trial be reset pursuant to the parties'

4  stipulation to September 14, 2015.  (ECF No. 63.)

5      On June 11, 2015, Movant informed the court "she may be retaining new counsel, Kenny

6  Giffard" (ECF No. 73) and Mr. Giffard was substituted as counsel for her on June 23, 2015 (ECF

7  No. 75).  At a July 16, 2015, status conference, the trial was reset for May 9, 2016.  (ECF No.

8  78.)

9      On January 28, 2016, the Government filed a Superseding Indictment, charging Movant

10  with the following: six counts of bank fraud (18 U.S.C. § 1344 [counts 1-6]), six counts of

11  making a false statement (18 U.S.C. § 1014 [counts 7-12]), one count of money laundering (18

12  U.S.C. § 1957 [count 13]) and one count of aggravated identity theft (18 U.S.C. § 1028A(a)(1)

13  [count 14]).  Once again, it also alleged criminal forfeiture (18 U.S.C. §§ 982(a)(1), 982(a)(2)(A)

14  & 982(a)(2)(B)), upon conviction.  (ECF No. 87.)  On February 3, 2016, Movant pled not guilty

15  to the Superseding Indictment.  (ECF No. 92.)

16      Trial confirmation was held April 6, 2016 (ECF No. 101), however, pursuant to the

17  agreement of the parties, the trial was ultimately reset to late July 2016 (ECF No. 132).  Jury trial

18  commenced on July 27, 2016.  (ECF Nos. 146-47.)  On August 2, 2016, the jury returned guilty

19  verdicts on all fourteen counts.  (ECF Nos. 156 & 158.)

20      On August 12, 2016, attorney Thomas A. Johnson was substituted as counsel for Movant.

21  (ECF No. 161.)  Following the denial of a motion for reconsideration of a detention order, the

22  district court set the matter for sentencing on November 4, 2016.  (ECF Nos. 166-67.)

23      Following various proceedings regarding the presentencing report, sentencing was

24  ultimately held on February 24, 2017.  Movant was sentenced a term of 87 month as to counts

25  one through thirteen, to be served concurrently, and an additional term of 24 months, to be served

26  consecutively, on count fourteen, for a total of 111 months.  A $15,000 fine was imposed and

27  restitution in the amount of $1,219,000 was ordered.  On that same date, attorney Brian McComas

28  was substituted in as counsel for Movant.  (ECF No. 199.)

On March 3, 2017, Movant filed a notice of appeal.  (ECF No. 203.)  Judgment and commitment was filed on March 6, 2017.  (ECF No. 204.)

In a memorandum dated October 12, 2018, the Ninth Circuit Court of Appeals affirmed Movant's conviction.  Regarding Movant's claim that trial counsel provided ineffective assistance of counsel by failing to argue that the money laundering and aggravated identity theft charges were barred by the statute of limitations, the Ninth Circuit declined to address it and stated the claim was better suited for habeas corpus review pursuant to Title 28 of the United States Code section 2255.  As concerned Movant's second claim in that court – that the district court erred in imposing a two-level sentencing adjustment pursuant to the United States Sentencing Guidelines section 3B1.3 – the Ninth Circuit found no error.  (ECF No. 228.)

On July 15, 2019, Movant filed the instant motion with this court.  (ECF No. 233.)  On November 19, 2019, Movant filed a motion entitled "Motion for Immediate Release Pending the Successful Vacating, Setting Aside and/or Correcting the Sentence Pursuant to 18 U.S.C. 2255 and Notice of Non-Consent to Any Extension …."  (ECF No. 242.)

On January 16, 2020, the Government filed its opposition to the motion.  (ECF No. 244.)  Thereafter, Movant filed a "Response to Government's Opposition[]" on February 18, 2020 (ECF No. 246), and a traverse to that same opposition on February 26, 2020 (ECF No. 247).

On July 6, 2020, Movant filed a document entitled "Petitioner's Request for Ruling on the Motion to Vacate Pursuant to 28 U.S.C. § 2255."  (ECF No. 248.)

IV.    Legal Standard

A federal prisoner making a collateral attack against the validity of his or her conviction or sentence must do so by way of a motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255, filed in the court that imposed sentence.  Tripati v. Henman, 843 F.2d 1160, 1162 (9th Cir. 1988).  Under § 2255, the federal sentencing court may grant relief if it concludes that the prisoner was sentenced in violation of the Constitution or laws of the United States.  United States v. Barron, 172 F.3d 1153, 1157 (9th Cir. 1999) (citing 28 U.S.C. § 2255).  Relief is warranted only where a movant has shown "a fundamental defect which inherently results in a complete miscarriage of justice …."  Davis v. United States, 417 U.S. 333, 346 (1974) (quoting

4

1  Hill v. United States, 368 U.S. 424, 429 (1962)).

2  V.    Discussion

3  ***Ineffective Assistance of Counsel: Statute of Limitations (Ground One)***

4  Movant complains that defense counsel provided ineffective assistance of counsel by

5  failing to challenge that counts 13 and 14 were barred by the applicable statute of limitations, thus

6  entitling her to relief.

7  The *Strickland* Standard

8  The Sixth Amendment standard for analyzing an ineffective assistance of counsel claim is

9  well established.  To prevail on a claim of ineffective assistance of counsel, a petitioner must

10  show that his trial counsel's performance "fell below an objective standard of reasonableness"

11  and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result

12  of the proceeding would have been different."  Strickland v. Washington, 466 U.S. 668, 687-88,

13  694 (1984).

14  Under the first prong of the Strickland test, a petitioner must show that counsel's conduct

15  failed to meet an objective standard of reasonableness.  Strickland, 466 U.S. at 687.  There is "a

16  'strong presumption' that counsel's representation was within the 'wide range' of reasonable

17  professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466

18  U.S. at 689).  A petitioner must rebut this presumption by demonstrating that his counsel's

19  performance was unreasonable under prevailing professional norms and was not the product of

20  "sound trial strategy." Strickland, 466 U.S. at 688-89.  Judicial scrutiny of defense counsel's

21  performance is "highly deferential," and thus the court must evaluate counsel's conduct from his

22  or her perspective at the time it occurred, without the benefit of hindsight.  Id. at 689.

23  The second prong of the Strickland test requires a petitioner to show that counsel's

24  conduct prejudiced him.  Strickland, 466 U.S. at 691-92.  Prejudice is found where "there is a

25  reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

26  would have been different."  Id. at 694.  A reasonable probability is one "'sufficient to undermine

27  confidence in the outcome.'"  Summerlin v. Schriro, 427 F.3d 623, 640 (9th Cir. 2005) (quoting

28  Strickland, 466 U.S. at 694).  "This does not require a showing that counsel's actions 'more likely

5

1  than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a

2  more-probable-than-not standard is slight and matters 'only in the rarest case.'" <u>Richter</u>, 562 U.S.

3  at 112 (quoting <u>Strickland</u>, 466 U.S. at 693).  "The likelihood of a different result must be

4  substantial, not just conceivable." <u>Id</u>.

5                         Analysis

6       Counsel's failure to raise a statute-of-limitations defense constitutes deficient performance

7  where it is clear from the face of the indictment or information that the statute of limitations has

8  run.  <u>See, e.g.</u>, <u>United States v. Liu</u>, 731 F.3d 982, 995-98 (9th Cir. 2013) (stating that where the

9  date of the conduct alleged in the indictment was more than five years earlier than the date of the

10  indictment and the statute of limitations was five years, "[w]e can think of no legitimate reason

11  for ... trial counsel not to have raised the obvious statute-of-limitations defense").  If the

12  untimeliness of the charge is not apparent from the face of the indictment or information, the

13  question is whether counsel's failure to raise a statute-of-limitations defense, considered in light

14  of all the circumstances, was outside the wide range of professionally competent assistance.  <u>See</u>

15  <u>Strickland</u>, 466 U.S. at 690.

16       Title 18 of the United States Code section 3282(a) provides that "[e]xcept as otherwise

17  expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not

18  capital, unless the indictment is found or the information is instituted within five years next after

19  such offense shall have been committed."

20       As previously noted, count 13 alleged the crime of money laundering (18 U.S.C. § 1957)

21  and count 14 alleged the crime of aggravated identity theft (18 U.S.C. § 1028A(a)(1)).  (ECF No.

22  87 at 9-10.)  Title 18 of the United States Code section 1957(a) reads:  "Whoever, in any of the

23  circumstances set forth in subsection (d), knowingly engages or attempts to engage in a monetary

24  transaction in criminally derived property of a value greater than $10,000 and is derived from

25  specified unlawful activity, shall be punished as provided in subsection (b)."  Section

26  1028A(a)(1) of the same title provides, in relevant part, "[w]hoever, during and in relation to any

27  felony violation ..., knowingly transfers, possesses, or uses, without lawful authority, a means of

28  identification of another person shall, in addition to the punishment provided for such felony, be

6

1  sentenced to a term of imprisonment of 2 years."  Section 1028A(c) provides the list of predicate

2  offenses.  Bank fraud is one of them.  <u>See</u> 18 U.S.C. § 1028A(c)(5).

3       Both count 13 and count 14 reference bank fraud as the underlying unlawful activity,

4  specifically noting that crime as charged in count 2.[2]  Title 18 of the United States Code section

5  1344 provides as follows:

6       Whoever knowingly executes, or attempts to execute, a scheme or
      artifice--
7
8       (1) to defraud a financial institution; or

9       (2) to obtain any of the moneys, funds, credits, assets, securities, or

10  _____

    [2] The Superseding Indictment as to both counts at issue provides, in relevant part, as follows:
11
12       COUNT   THIRTEEN:   [18   U.S.C.   §   1957   –   Monetary
        Transactions…]

13       The Grand Jury further charges: T H A T

14            ALLA SAMCHUK,

15       defendant herein, on or about the date set forth below, in the State
        and Eastern District of California and elsewhere, did knowingly
16       engage and attempt to engage in a monetary transaction affecting
        interstate and foreign commerce in criminally derived property of a
17       value greater than $10,000, as set forth below, such property having
        been derived from specified unlawful activity, that is, Bank Fraud, as
18       set forth in Count Two, in violation of Title 18, United States Code,
        Section 1344; and Making a False Statement, as set forth in Count
19       Eight, in violation of Title 18, United [States] Code, Section 1014 …
        [] all in violation of Title 18, United States Code, Section 1957.
20
21       COUNT FOURTEEN: [18 U.S.C. § 1028A(a)(1) – Aggravated …]

22       The Grand Jury further charges: T H A T

23            ALLA SAMCHUK,

24       defendant herein, on or about January 19, 2007, within the State and
        Eastern District of California, during and in relation to a felony
25       violation of Title 18, United States Code, Section 1344, Bank Fraud,
        as set forth in Count Two; and a felony violation of Title 18, United
26       States Code, Section 1014, Making a False Statement, as set forth in
        Count Eight did knowingly use without lawful authority, a means of
27       identification of another person, to wit: the name, date of birth, and
        social security number of Person 1, all in violation of Title 18, United
28       States Code, Sections 2 and 1028A(a)(1).
    (ECF No. 87 at 9-10.)

                                        7

other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;

shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

As used in the statute, "a scheme or artifice … to defraud a financial institution" is not subject to precise definition.  See United States v. Ragosta, 970 F.2d 1085, 1090 (2nd Cir. 1992) (citing Third Circuit authority that "[t]he term 'scheme to defraud,' ... is not capable of precise definition. Fraud instead is measured in a particular case by determining whether the scheme demonstrated a departure from fundamental honesty, moral uprightness, or fair play and candid dealings in the general life of the community"); United States v. Norton, 909 F. Supp. 567, 568 (N.D. Ill. 1995), affirmed, 108 F.3d 133, cert. den., 522 U.S. 816 (to convict under first subsection of bank fraud statute, it is necessary to prove recognizable scheme formed with intent to defraud financial institution, that is, scheme demonstrating departure from fundamental honesty, moral uprightness, or fair play and candid dealings in the general life of the community).

Both the original Indictment and the Superseding Indictment include a "Scheme to Defraud" section, laying out the Government's factual assertions concerning Movant's separate schemes involving real properties located in Sacramento.  In the original Indictment, two schemes to defraud were identified with one property in Roseville (7192 Artisan Circle) and another in El Dorado Hills (1328 Souza Drive), "[b]eginning at a time not known to the grand jury, but no later than on or about October 19, 2006, and continuing through or about April 20, 2007."  (ECF No. 10 at 2-4.)  Later, in the Superseding Indictment, three schemes to defraud were identified that included the aforementioned properties and another property also located in Roseville (3269 Mount Tamalpais Drive), "[b]etween on or about October 19, 2006, and continuing through on or about March 5, 2008."  (ECF No. 87 at 2-4.)

Initially, to the degree Movant argues the Government's position and/or dates have changed concerning the conduct resulting in these charges and that the Government should be estopped from changing its theory at trial (ECF Nos. 233 at 27, n.6 & 247 at 3-4), the argument is not well taken.  In addition to the language concerning the time frame of the schemes to defraud,

8

1   the record belies Movant's arguments:  witnesses testified to a "2006-2008" time period (ECF

2   No. 244-1 at 76-77, 87, 97, 238, 266 [not just 2006-2007 reference identified by Movant]; see

3   also ECF No. 182 at 66) and Government exhibits referenced dates beyond February 2007 (ECF

4   No. 244-1 at 5-6, 7-9, 11, 24-49, 54-58, 65).  Specifically, the Government's evidence, as it

5   relates to the predicate felony of bank fraud in count 2, established that Movant submitted an

6   application in another's name for a home equity line of credit (HELOC) on the Artisan Circle

7   property in January 2007, and that between February 6, 2007 and March 16, 2007, movant

8   withdrew funds from the HELOC account and/or wrote checks for her own benefit against that

9   same HELOC account. (See ECF No. 244-1 at 50 [Govt Ex. 125: $75,000 check to Albina

10  Samchuk dated 2/6/07], 51 [Govt Ex. 126: $5,200 check to A. Samchuk dated 2/14/07], 52 [Govt

11  Ex. 128: $800 check to Albina Samchuk dated 2/19/07], 53 [Govt Ex. 129: $5,000 check to A.

12  Samchuk dated 2/24/07], 54 [Govt Ex. 130: $2,912.59 check to Bank of America dated 3/15/07],

13  55 [Govt Ex. 131: $4,000 check to Five Star Patio Covers dated 3/15/07], 56 [Govt Ex. 132:

14  $2,000 check to Vlad's Alterations dated 3/16/07], 57 [Govt Ex. 133: $2,000 check to A.

15  Samchuk dated 3/16/07], 58 [Govt Ex. 134: $5,000 check to Albina S. dated 3/16/07].)

16          The statute of limitations for bank fraud is ten years.  See 18 U.S.C. § 3293; United States

17  v. Najjor, 255 F.3d 979, 983 (9th Cir. 2001) ("Under 18 U.S.C. § 3293, the statute of limitations

18  for violations of 18 U.S.C. § 1344 is ten years").  Further, bank fraud is a continuing offense.  See

19  United States v. Nash, 115 F.3d 1431, 1441 (9th Cir. 1997); see also United States v. Najjor, 255

20  F.3d at 983-84.  A continuing offense "involves (1) an ongoing course of conduct that causes

21  (2) a harm that lasts as long as that course of conduct persists."  United States v. Morales, 11 F.3d

22  915, 921 (9th Cir. 1993).  Unlike most crimes, it is only after this ongoing course of conduct is

23  complete that the "crime is complete" for statute of limitations purposes.  Toussie v. United

24  States, 397 U.S. 112, 115 (1970).  Thus, a continuing offense punishes "each execution of a

25  fraudulent scheme rather than each act in furtherance of such a scheme...."  United States v.

26  Molinaro, 11 F.3d 853, 859 (9th Cir. 1993).  The Supreme Court has held an offense is

27  "continuing" when either: (1) "the explicit language of the substantive criminal statute compels

28  such a conclusion"; or (2) "the nature of the crime involved is such that Congress must assuredly

9

1    have intended that it be treated as continuing one." Toussie, 397 U.S. at 115.

2         A crime is complete when each element of the crime has occurred.  United States v.

3    Drebin, 557 F.2d 1316, 1332 (9th Cir. 1977).  And, when the crime requires a predicate felony, as

4    in the case of sections 1028A and 1957, "[a] limitation period begins to run only when all the

5    elements of the underlying offense have been committed." United States v. Beardslee, 197 F.3d

6    378, 384 (9th Cir. 1999).  Thus, the crimes charged in counts 13 and 14 are not complete until the

7    underlying crimes charged in count 2 have also occurred, relating to the scheme to defraud and

8    the Artisan Circle property in Roseville in particular.  See Beardslee, 197 F.3d at 384.

9         Here then, the limitations period began to run only when all of the elements of the bank

10   fraud offense had been completed.  Because bank fraud is a continuing offense, and the evidence

11   at trial established that, with particular regard to the scheme involving the Artisan Circle property,

12   the offense was not completed until about March 16, 2007, with the last access to the HELOC

13   funds, the statute of limitations began to run on that date.

14        Movant relies upon the decision in United States v. Liu, 731 F.3d 982, to support her

15   argument otherwise.  In Liu, the defendant was convicted of criminal copyright infringement and

16   trafficking in counterfeit labels.  Id. at 985, 987.  Unlike Liu, however, this matter involves a

17   challenge to two counts that include or require a predicate or underlying offense.  More

18   specifically, the money laundering and aggravated identity theft offenses require a predicate or

19   underlying offense, and in this case that predicate or underlying offense is bank fraud.  Neither

20   criminal copyright infringement nor trafficking in counterfeit labels require an underlying or

21   predicate offense.  (See 17 U.S.C. § 506(a)(1)(A) & 18 U.S.C. §2319(b)(1); 18 U.S.C. § 2318(a).)

22   Therefore, unlike Liu, it was not clear from the face of the indictment that a statute of limitations

23   defense should have been obvious.  Id., at 995-98 ("Liu asserts that he lacked notice that

24   Crouching Tiger, Hidden Dragon would be at issue until more than five years after the alleged

25   infringement.  This issue can be resolved on the current record given that it turns largely on the

26   language of the indictments rather than on factual matters.  We therefore proceed to address it. [¶]

27   We agree with Liu that he had no notice whatsoever that he should prepare to be prosecuted for

28   willfully infringing a motion picture work until the second superseding indictment.  He was

1    alleged to have infringed it between 2001 and 2003, but the second superseding indictment was

2    not returned until 2010.  The delay in bringing this charge is longer than the law permits").

3         Significantly and distinguishingly, counsel here would have had to do more than simply

4    compare the specific dates referenced in counts 13 and 14 of the Indictment to the date that

5    document was filed with the court.  Instead, a reasonable professional would have also considered

6    the predicate offense of bank fraud and the scheme to defraud that the Government alleged, and

7    would ultimately be required to prove, to have occurred "on or about October 19, 2006, and

8    continuing through on or about April 20, 2007," involving the Artisan Circle property.  (ECF No.

9    10 at 2.)  Hence, in this matter, it was in no way obvious a statute of limitations defense was

10   obtainable, and counsel cannot be said to have performed deficiently on that basis.  Strickland,

11   466 U.S. at 690.

12        All defense counsel would have been aware of the predicate offenses of bank fraud and

13   making false statements alleged in the money laundering and aggravated identity theft counts by

14   virtue of the original Indictment and the Superseding Indictment.  The predicate offense of bank

15   fraud includes the requirement of proving a scheme or artifice to defraud.  That scheme to defraud

16   – in either the original or superseding document – expressly referenced a time frame that falls

17   within the five year statute of limitations period.  Certainly by the time of Movant's trial, if not

18   decades before, the law was well-settled that bank fraud was a continuing offense (Nash, 115

19   F.3d at 1441), and that where a predicate offense is required (as is the case for a violation of

20   sections 1028A & 1957) the limitations period does not begin to run until all the elements of the

21   underlying or predicate offense have been committed (Beardslee, 197 F.3d at 384).  Accordingly,

22   it is strongly presumed that defense counsel reasonably elected not to assert a statute of

23   limitations defense for such a defense in light of these facts had little to no hope of succeeding.

24   Richter, 562 U.S. at 104; Strickland, 466 U.S. at 689.

25        Further, the Declaration of Brian C. McComas attached to Movant's motion does not

26   establish any deficiency of performance by either attorney Johnson or attorney Giffard.

27   Specifically, McComas declares that Johnson advised McComas that "[h]e was not aware [of]

28   statute of limitations issues," and later indicated "he was uncomfortable submitting a

declaration." (ECF No. 233 at 41-42, ¶¶ 7, 11-12.) McComas further declares that Giffard advised McComas that "he did not look at the statute of limitations," and after being advised by McComas of "the statute of limitations violation," Giffard "said: 'I messed up.'" Thereafter, Giffard did not reply to McComas' correspondence or requests. (ECF No. 233 at 41-42, ¶¶ 8 & 13.)

In the context of these findings, none of the responses provided by attorneys Johnson or Giffard to McComas amount to a *showing* of ineffective assistance of counsel. McComas' declaration includes his own interpretation of the statute of limitations issue and a recounting of the responses by Johnson and Giffard to McComas' assertions in that regard. Said another way, the declaration merely serves to record alleged responses from Johnson and Giffard after the two attorneys had been advised by McComas that they had provided ineffective assistance of counsel. When provided with materials to review, neither attorney elected to provide a supporting declaration to McComas. Where Movant elects to infer from Johnson and Giffard's lack of cooperation that her claim is supported, the court notes another possibility. In light of the findings above, it is reasonable to infer from Johnson and Giffard's silence and inaction that, upon review of the materials provided by McComas, neither had performed deficiently or in the absence of tactical purpose. It is reasonable to infer that Johnson and Giffard understood the money laundering and aggravated identity theft counts were predicated on the bank fraud count, involving a scheme to defraud that was not complete until March 2007, making any statute of limitations defense following the filing of the February 16, 2012, indictment unlikely, if not frivolous.

Given the fact that the predicate offense associated with counts 13 and 14 was bank fraud involving the Artisan Circle property, and that bank fraud is a continuing offense, where the last check disbursed from the HELOC funds tied to the Artisan Circle property occurred in March 2007, despite specific references in counts 13 and 14 to earlier transactions involved in the scheme to defraud, and where the record is clear as to the Government's 2006 through 2008 timeline of the offenses involved, defense counsels' performance was reasonable and sound. Moreover, Movant cannot establish prejudice because, given the above, there is no reasonable

1    probability that, but for the errors she alleges, the result of the proceeding would have been

2    different.  In other words, had defense counsel asserted a statute-of-limitations defense as to

3    counts 13 and 14, it is not reasonably probable the trial court would have agreed for the reasons

4    explained above.  Strickland, 466 U.S. at 694.  A different result may be conceivable, but the

5    likelihood of a different result in this case is not substantial.  Richter, 562 U.S. at 112.

6        For the foregoing reasons, and particularly the highly deferential scrutiny afforded defense

7    counsels' performance, Movant has failed to demonstrate that counsels' performance was

8    unreasonable under prevailing professional norms or that it was not the product of sound trial

9    strategy.  Nor can Movant show that counsels' performance prejudiced her.

10       In sum, the undersigned finds neither attorney Giffard nor attorney Johnson provided

11   ineffective assistance of counsel where neither asserted a statute of limitations defense to counts

12   13 and 14.  As a result, Movant is not entitled to relief on this ground.

13       ***Ineffective Assistance of Counsel: Sentencing (Ground Two)***

14       Movant complains "sentencing counsel was ineffective in failing to challenge the loss

15   amount considered when imposing sentence and restitution."  (ECF No. 233 at 34.)  More

16   specifically, she contends sentencing counsel should have retained "experts in financial

17   regulation, white collar crime, public finance, and banking," to challenge the loss amount.  (ECF

18   No. 233 at 35.)

19          Sentencing Proceedings

20       Movant was sentenced on February 24, 2017.  (ECF Nos. 204 & 222.)  The trial court

21   imposed an 87-month sentence for counts 1 through 13, and a consecutive 24-month sentence on

22   count 14, for a total sentence of 111 months.  (ECF No. 222 at 31-32.)

23       Concerning restitution, the parties both cite to a figure of $739,362.  (See ECF No. 233 at

24   34-38; ECF No. 244 at 15-16; ECF No. 247 at 6-7.)  The final version of the Presentence Report

25   mirrors that figure.  (ECF No. 180 at 3, 7, 15, 17-18.)[3]

26   _____

27   [3] The undersigned notes that during pronouncement of sentence, District Judge Burrell imposed a
     restitution fine of $1,219,000.  (ECF No. 222 at 32.)  Additionally, the court's Judgment in a

28   Criminal Case filed March 6, 2017, records a restitution fine in the amount of $1,219,000.  (ECF
     No. 204 at 5.)

1    Legal Standard

2    To briefly review, to prevail on a claim of ineffective assistance of counsel, Movant must

3    show that counsels' performance was deficient, and that as a result of that deficiency, she suffered

4    prejudice.  Strickland, 466 U.S. at 684-694.

5    Analysis

6    Movant claims that "the loss was erroneously calculated as the difference between the

7    unpaid principal balance of the mortgages and the subsequent sales price of the properties," and

8    that "[t]here is reason to believe that the loss amounts were inflated, as has been demonstrated in

9    other cases with expert assistance."  (ECF No. 233 at 36.)  Movants contends that "[n]o strategic

10   or tactical decision justifies counsel's failure to obtain [expert assistance]," because such

11   assistance "gave [Movant] her best chance at a reduced sentence and restitution order."  (ECF No.

12   233 at 37.)

13   At pages 35 and 36 of her motion, Movant argues counsel did not "retain experts in

14   financial regulation, white collar crime, public finance, and banking" and that there "is reason to

15   believe that the loss amounts were inflated, as has been demonstrated in other cases with expert

16   assistance," citing to the "Testimony of William Black in United States v. Charikov, 12-CR-003-

17   LKK, Doc #171 (testifying that executives at WAMU committed control fraud and received

18   lucrative payoffs."  (ECF No. 233 at 35-36.)  A review, however, of this court's docket for case

19   number 2:12-cr-00003-LKK, and docket number 171 in particular, does not provide the testimony

20   of William Black, nor any testimony concerning the actions of Washington Mutual executives.

21   Rather, the transcript that comprises docket entry number 171 is dated August 12, 2014, and is

22   referenced as an "excerpt from trial proceedings re: discovery motion."  The transcript is thirteen

23   pages in length and does not include any witness testimony.  Apparently, Mr. Black was in the

24   courtroom, but he did not testify.[4]  A review of subsequent transcripts filed on the docket of that

25   _____

[4] The transcript includes the following mention:

26   

27       MR. BALAZS: The expert also tells me, Mr. Black, that the Clayton
         holdings is a cooperating witness with the government, and --

28       THE COURT: But I thought the case was over. It is not over. Mr.

14

1    matter reveals a William Black testified in the matter entitled United States v. Charikov on

2    August 14 and 15, 2014.  The transcript of that testimony is approximately 150 pages in length.

3    Movant makes no attempt to explain why defense counsel in this case was ineffective for failing

4    to call a witness such as Mr. Black other than to generally identify him as an expert in "financial

5    regulation, white collar crime, public finance, and banking."  The fact trial counsel for the

6    defendants in another, unrelated case called such an expert in no way explains or demonstrates

7    ineffective assistance in this case.  Nor does Mr. Black's testimony, as reviewed by the

8    undersigned, appear to relate to any loss calculation.

9         Next, Movant cites to the "report of Professor Shaun P. Martin in United States v.

10   Kuzmenko, CR-2-11-210-JAM, Doc #561-1 (calculating the loss amount and appropriate

11   restitution as far below the conclusions reached in the PSR)."  (ECF No. 233 at 35-37.)  The

12   report is 26 pages in length and appended to the October 13, 2015, sentencing memorandum filed

13   on behalf of approximately ten defendants in the Kuzmenko matter.  Again, Movant makes no

14   effort to explain or demonstrate how defense counsel's failure to retain Mr. Martin or admit

15   Martin's report amounts to ineffective assistance of counsel in this matter.  Movant's claims are

16   based on speculation alone.  Gonzalez v. Knowles, 515 F.3d 1006, 1015-016 (9th Cir. 2008)

17   (speculative allegations do not establish Strickland prejudice).

18        The Government's opposition accurately states that that "the Ninth Circuit has concluded

19   that the district court correctly calculated loss by 'taking the principal amount of the loan and

20   subtracting any credits from the subsequent sale of the property'" in United States v. Hymas, 780

21   F.3d 1285, 1293 (9th Cir. 2015); see also United States v. Kuzmenko, 777 Fed. Appx. 186, 188-

22   89 (9th Cir. 2019).  Movant's citation to United States v. Berger, 587 F.3d 1038 (9th Cir. 2009),

23

24   _____
             Black is shaking his head no.

25           MR. BALAZS: They have potentially some ongoing investigations
             in different --
26
             THE COURT: All right.
27

28   (2:12-cr-00003-LKK, ECF No. 171 at 10.)

1   as requiring "a district court to determine how much loss a defendant actually caused" (ECF No.

2   233 at 37) is unpersuasive.  Berger applies in the securities fraud context.  It did not expressly

3   hold a district court must adopt any particular methodology in fulfilling its requirement to show

4   actual loss caused by a defendant; notably, the Berger court noted that district "courts may

5   employ various methodologies to determine loss and that loss need not be established with

6   precision …" Id. at 1045.

7       In United States v. Morris, 744 F.3d 1373 (9th Cir. 2014), a mortgage fraud case, the

8   Ninth Circuit adopted an approach employed and adopted in other circuits wherein

> the first step [in calculating loss in mortgage fraud cases,] is to
> calculate the greater of actual or intended loss, where actual loss is
> the reasonably foreseeable pecuniary harm from the fraud.  *This
> amount will almost always be the entire value of the principal of the
> loan, as it is reasonably foreseeable to an unqualified borrower that
> the entire amount of a fraudulently obtained loan may be lost.*  The
> second step is to apply the "credits against loss" provision and deduct
> from the initial measure of loss any amount recovered or recoverable
> by the creditor from the sale of the collateral.  This second calculation
> is made without any consideration of reasonable foreseeability.

15   Id. at 1375, italics added.  Both Morris and Hymas concluded that the district courts correctly

16   calculated the loss caused by defendant by subtracting any credits from the subsequent sale of the

17   property from the principal amount of the loan.  Application Note 3(A)(1) to the United States

18   Sentencing Guideline 2.B.1 provides that the "actual loss" for which a defendant is liable is "the

19   reasonably foreseeable pecuniary harm that resulted from the offense."  As Morris notes, that

20   amount will typically be the principal of the loan.[5]

21       Therefore, here, defense counsel at the time of sentencing did not perform below any

---

[5] In a Memorandum decision filed May 28, 2019, in United States v. Kuzmenko, case number 15-10526, the Ninth Circuit stated: "In mortgage fraud cases, loss is calculated by deducting 'any amount recovered or recoverable by the creditor from the sale of the collateral' from 'the greater of actual or intended loss, where actual loss is the reasonably foreseeable pecuniary harm from the fraud.' [Citation.]  This approach 'ensure[s] that defendants who fraudulently induce financial institutions to assume the risk of lending to an unqualified borrower are responsible for the natural consequences of their fraudulent conduct.' [Citations.]  'The court need only make a reasonable estimate of the loss . . . based on available information[.]' U.S.S.G. § 2B1.1 cmt. N.3(C).  The district court's calculation subtracted the amounts recovered in foreclosure sales from the amounts originally borrowed.  This calculation reflects a reasonable estimate of the natural consequences of Appellants' fraudulent conduct."

1  objective standard of reasonableness in failing to retain as expert such as those noted in Movant's

2  briefing, particularly where Movant has done nothing more than speculate that such an expert

3  would have been helpful to her case as concerns any loss calculation.  Strickland, 466 U.S. at

4  687-88.  Further, movant cannot establish prejudice because while it may be conceivable that

5  such an expert could have provided helpful testimony or other admissible evidence,

6  conceivability does not equate to a substantial likelihood of a different result, the required

7  showing in a case such as this.  Richter, 562 U.S. at 112.  Even if the expert provided helpful

8  information, there is no prejudice where Movant cannot show that the district court would have

9  been persuaded by such a presentation, and where the district court was not required to rely upon

10  such a methodology.

11  Given the above, and engaging in the required strong presumption that counsel's conduct

12  fell within the wide range of professional assistance, the undersigned finds defense counsel did

13  not perform deficiently nor unreasonably under prevailing professional norms.  Strickland, 466

14  U.S. at 688-89.  Nor did Movant establish a reasonably probability of a different outcome but for

15  counsels' alleged errors, as is Movant's burden.  Id. at 694.

16  ***Evidentiary Hearing***

17  Finally, the undersigned has carefully reviewed the record and concludes that no

18  evidentiary hearing is required in this action.  Schriro v. Landrigan, 550 U.S. 465, 474 (2007) ("if

19  the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district

20  court is not required to hold an evidentiary hearing").  It is also clear that the pertinent facts of the

21  case are fully developed in the record before the court.  Id., at 475 ("the District Court was well

22  within its discretion to determine that, even with the benefit of an evidentiary hearing, [habeas

23  petitioner] could not develop a factual record that would entitle him to habeas relief").

24  **CONCLUSION AND RECOMMENDATION**

25  IT IS HEREBY RECOMMENDED that:

26  1.  Movant's July 15, 2019, motion to vacate, set aside, or correct her sentence pursuant to

27  28 U.S.C. § 2255 be denied; and

28  2.  The Clerk of the Court be directed to close the companion civil case No. 2:19-cv-

17

1    01326-KJM-KJN.

2            These findings and recommendations are submitted to the United States District Judge

3    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

4    after being served with these findings and recommendations, any party may file written

5    objections with the court and serve a copy on all parties.  Such a document should be captioned

6    "Objections to Magistrate Judge's Findings and Recommendations."  If movant files objections,

7    she shall also address whether a certificate of appealability should issue and, if so, why and as to

8    which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the

9    applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C.

10   § 2253(c)(3).  Any response to the objections shall be served and filed within fourteen days after

11   service of the objections.  The parties are advised that failure to file objections within the

12   specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951

13   F.2d 1153 (9th Cir. 1991).

14   Dated:  August 25, 2020

15

16                                          KENDALL J. NEWMAN
                                            UNITED STATES MAGISTRATE JUDGE
17

18   .257

19

20

21

22

23

24

25

26

27

28