UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America,<br><br>                Plaintiff,<br><br>    v.<br><br>Alla Samchuk,<br><br>                Defendant. | No. 2:12-cr-00066-KJM<br><br>ORDER |

Alla Samchuk moves to reduce her sentence to time served under 18 U.S.C. § 3582. She contends her medical conditions put her at greater risk of severe COVID-19 symptoms, and she is incarcerated in a facility that "presents an ongoing serious risk" to her health. Mot. at 8, ECF No. 251. Although Samchuk committed a serious fraud crime and has completed only about half of her sentence of incarceration, several factors weigh in favor of her motion, including the risk of serious illness if she remains in the prison, her "low risk" classification by the Bureau of Prisons (BOP), and her release plan. As explained below, the motion is **granted**.

I.     **BACKGROUND**

Samchuk was a licensed real estate agent. Presentence Rep. (PSR) ¶ 5, ECF No. 180. She falsified home loan applications using the identity of three straw buyers. *Id*. ¶ 22. She purchased three residences, two of which she resided in, using straw buyers' identities while residing in homes. *Id*. She also falsified financial documents and deeds and used her daughter's bank

1

account to launder the proceeds of her scheme. *See id.* Although the arrest warrant was issued on January 27, 2012, she had been under investigation since 2011. *Id.* ¶¶ 5, 14.

After her arrest, Samchuk was released on an unsecured appearance bond. *See* ECF Nos. 7 & 8. She complied with all pretrial orders. About four years after her arrest, a federal grand jury returned a fourteen-count superseding indictment against Samchuk charging her with bank fraud, in violation of 18 U.S.C. § 1344 (counts one through six); false statements, in violation of 18 U.S.C. § 1014 (counts seven through twelve); money laundering, in violation of 18 U.S.C. § 1957 (count thirteen); and aggravated identity theft, in violation of 18 U.S.C. § 1028A (count fourteen). *See* Superseding Indictment, ECF No. 87. In August, after a four-day jury trial, Samchuk was found guilty on all counts. *See generally* Jury Verdict, ECF No. 158. In February 2017, another judge of this court sentenced her to 111 months' incarceration and 24 months' supervised release. *See* Judgment & Commitment at 3–4, ECF No. 204. She has thus completed approximately 41 percent of her sentence of incarceration. *See* Mot. Ex. 4 at 3, ECF No. 251-4; Opp'n at 6, ECF No. 253.

At the time of sentencing and when Samchuk entered prison, she indicated she had suffered from chronic periodontitis and migraines since 2012. *See* PSR ¶ 51. Since her incarceration she continues to suffer from migraines, complains of "breathing problems," and was recently diagnosed with chronic obstructive pulmonary disease (COPD). *See* Mot. at 7. Medical records indicate she is being treated for allergic rhinitis, COPD, chronic periodontitis (localized), hemorrhoids (unspecified), scoliosis (unspecified), disorder of kidney and ureter (unspecified), unspecified abnormalities of breathing and cluster headaches. *See* BOP Med. Records at 2, ECF No. 260-1 (sealed); Opp'n at 10. She is fifty years old. BOP Med. Records at 1.

After Samchuk entered prison, she completed wellness, religion, financial management, parenting skills courses and the "powered industrial truck program." *See* Mot. Ex. 4 at 4. She has four children, with the youngest a teenager at the time of her sentencing. PSR ¶ 51. She has held a full-time prison job as a laundry worker for more than three years. *See* Mot. Ex. 4 at 4. She has no record of any discipline while in custody. *See id.*

/////

1    Samchuk through counsel has moved for compassionate release under § 358(c)(1)(A)(1). *See generally* Mot. Briefing was completed, and the motion was submitted without a hearing. *See* Opp'n; Reply, ECF No. 257; Minute Order, ECF No. 258.

If Samchuk is released, she plans to live with her parents in Roseville, California. Mot. at 10. Their home is large enough that she will have her own bedroom and bathroom where she can quarantine. *See id.* Samchuk plans to continue her work as a home care provider for her grandfather through Sacramento County In-Home Supportive Services (IHSS). *Id.*

## II.    LEGAL STANDARD

The district court that imposed a custodial sentence can modify the term of imprisonment under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018. The defendant must first exhaust administrative remedies. *Id.* § 3582(c)(1)(A). If a defendant has exhausted administrative remedies, the analysis is twofold. First, the court must find "extraordinary and compelling reasons warrant" the requested reduction. *Id.* § 3582(c)(1)(A)(i). Second, the court must consider the same factors that were applicable at the original sentencing, enumerated in 18 U.S.C. § 3553(a), to the extent they remain applicable. *See id.* § 3582(c)(1)(A).

Section 3582 further requires a reduction to be "consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A). In 2006, the Sentencing Commission issued a policy statement addressing what qualifies as "extraordinary and compelling reasons" to release a defendant from BOP custody. *See* U.S.S.G. § 1B1.13 (last amended November 1, 2018). The Ninth Circuit recently has clarified: "[t]he Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *United States v. Aruda*, No. 20-10245, 2021 WL 1307884, at *4 (9th Cir. Apr. 8, 2021). Thus, the court here adheres to its prior practice of considering the Sentencing Commission's policy statement as guidance, recognizing that applying the policy statement is not required.

Although the Ninth Circuit has not decided which party "bears the burden in the context of a motion for compassionate release brought pursuant to § 3582(c) as amended by the [First

/////

Step Act], district courts to have done so agree that the burden remains with the defendant."
*United States v. Becerra*, No. 18-0080, 2021 WL 535432, at *3 (E.D. Cal. Feb. 12, 2021).

**III.   DISCUSSION**

The government does not dispute that Samchuk has satisfied the exhaustion requirement of § 3582(c). *See* Opp'n at 6. The court thus considers (A) whether Samchuk has demonstrated her motion is supported by extraordinary and compelling reasons and (B) whether applicable sentencing factors of § 3553(a) weigh in favor of her motion.

**A.     Extraordinary and Compelling Reasons**

According to the U.S. Centers for Disease Control, people living in congregate living situations have been vulnerable to infection with coronavirus because the virus is highly contagious in closed environments.[1] The combination of custody, housing, education, recreation, healthcare, food service and workplace environments within one physical setting makes for unique challenges in controlling the spread of coronavirus. *See supra* note 1. The BOP has "taken steps to try to protect inmates' and employees' health" and keep COVID-19 from its facilities, but it has "not been immune from the COVID-19 pandemic." Opp'n at 7. Many thousands of inmates have been diagnosed with COVID-19, and although thousands have recovered, more than 225 have died. *Id.*

In the facility where Samchuk lives, more than 273 inmates and 19 staff were "confirmed positive for COVID-19" in early January 2021 and are now deemed "recovered." Mot. at 8 (citing U.S. Bureau of Prisons statistics)[2]; *compare also* Opp'n at 7 (showing that only three staff members had tested positive for coronavirus in March 2021) *with* Reply at 2 (citing "at least 16 additional prisoners with positive prisoner cases – cases with an unclear outcome – over the last 10 days," as reported by the BOP). At the time of this order BOP reports three staff members and one prisoner tested positive; 233 inmates and 21 staff recovered. *Id*. (last visited June 4, 2021).

---

[1] *See* Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities, U.S. Centers for Disease Control and Prevention (CDC), July 22, 2020), *available at* https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (visited May 26, 2021).

[2] https://www.bop.gov/coronavirus/ (visited May 26, 2021).

4

Although COVID-19 vaccination programs have now been rolled out in BOP facilities, Samchuk claims she has not been offered a vaccination against COVID-19 and "has no control over her exposure to others within the prison setting." Mot. at 2. She claims her risk of infection remains serious, including because "variants of the coronavirus" can spread "from person to person with greater resistance." *Id*. at 3. The government does not dispute these claims. Samchuk's residing in a prison setting, without access to vaccination, supports a conclusion she is at a high risk of infection.

Samchuk's chronic health conditions as summarized above increase the risk she would suffer a more severe case of COVID-19 if infected. Other district courts have found comorbidities constitute medical conditions that increase the risk of severe illness from coronavirus warranting compassionate release. *See United States v. Bradley*, No. 2:14-CR-00293, 2020 WL 3802794, at *5 (E.D. Cal. July 7, 2020) ("defendant's combination of serious health conditions weighs heavily in favor of a sentence reduction."). Even without Samchuk's comorbidities, the court finds her COPD diagnosis alone supports granting her motion.

As noted, Samchuk's medical records show she has been diagnosed with COPD and suffers from "breathing abnormalities." *See* Opp'n at 10; BOP Medical Records at 2. She contends the CDC recognizes COPD as an underlying condition that places one "at increased risk for severe illness from the virus that causes COVID-19." Mot. at 7 (citing CDC, COVID-19: *People with Certain Medical Conditions*).[3] The government does not contend otherwise. Opp'n at 10–11 ("COPD qualifies as a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover." (internal quotations omitted)). Other district courts within the Ninth Circuit have recognized that COPD puts an individual at a higher risk of severe illness from COVID-19. *See United States v. Wooley*, No. 6:13-CR-00224-AA, 2020 WL 2490093, at *2 (D. Or. May 14, 2020) (finding COPD combined with threat of COVID-19 infection can provide basis for compassionate release).

---

[3] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (visited June 4, 2021).

Samchuk's comorbidities are many, and include allergic rhinitis, chronic periodontitis, hemorrhoids, scoliosis, disorder of kidney and ureter, unspecified abnormalities of breathing and cluster headaches. BOP Med. Records at 2. These conditions, in combination, also support granting her motion. *Cf. United States v. Bradley,* No. 2:14-CR-00293-KJM, 2020 WL 3802794, at *5 (E.D. Cal. July 7, 2020) ("defendant's combination of serious health conditions weighs heavily in favor of a sentence reduction").

In sum, Samchuk's comorbidities, breathing abnormalities and COPD together make for "extraordinary and compelling" circumstances that support her request for compassionate release.

### B. Section 3553(a) Sentencing Factors

A Sentencing Commission policy statement instructs "the court [to] consider the sentencing factors set forth in 18 U.S.C. § 3553(a) when deciding a motion for compassionate release, and the [c]ourt should not grant a sentence reduction if the defendant poses a risk of danger to the community, as defined in the Bail Reform Act." *United States v. Gonzalez*, 451 F. Supp. 3d 1194, 1197 (E.D. Wash. 2020), at *3 (citing U.S.S.G. § 1B1.13); *see also* 18 U.S.C. § 3582(c)(1)(A). These sentencing factors include, among others, (1) "the nature and circumstances of the offense and the history and characteristics of the defendant" and (2) "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public . . . ; and (D) to avoid unwarranted sentence disparities . . . ." 18 U.S.C. § 3553(a).

Here, Samchuk's offenses were undeniably serious. The loss to the victim banks totaled $739,362. PSR ¶ 15. Her similar fraud offenses in the past also counsel caution. But several other factors weigh in her favor. Samchuk complied with the conditions of her four-year-long pretrial release, which suggests she can comply with all laws if released. Nothing suggests she is violent or likely to put the community in physical danger. She will have the support of her family, a job and health insurance, which should stave off any temptation to commit financial fraud again.

/////

The court has conferred with its Probation Office, which will supervise Samchuk if she is released. That office has confirmed her release plan is acceptable if the court grants her motion.

On balance, the above factors favor granting Samchuk's motion for compassionate release.

### IV. CONCLUSION

The motion for compassionate release is **granted**. The court modifies defendant's previously imposed sentence of incarceration of 111 months to time served. All other previously imposed conditions of supervised release remain in effect for the full 24-month term. *See* Judgment & Commitment.

There being a verified residence and an appropriate release plan in place, this order is stayed for up to seven days to make appropriate travel arrangements and to ensure defendant's safe release. Defendant shall be released as soon as appropriate travel arrangements are made, and it is safe for her to travel. If more than seven days are needed to make appropriate travel arrangements and ensure defendant's safe release, then the parties shall immediately notify the court and show cause why the stay should be extended.

Given that she is not vaccinated, the court orders defendant to self-isolate for fourteen days in her parents' home once she arrives, as a means of protecting her health and that of the others residing in the home while also complying with all public health orders that remain in effect at the time.

This order resolves ECF No. 251.

IT IS SO ORDERED.

DATED: June 22, 2021.

_____
CHIEF UNITED STATES DISTRICT JUDGE